# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 17, 2011 Session

## STATE OF TENNESSEE v. RAYMOND BRADLEY, JR.

### Direct Appeal from the Criminal Court for Davidson County
No. 2008-B-1786    Seth Norman, Judge

_____

### No. M2010-02508-CCA-R3-CD - Filed July 11, 2011

_____

The defendant, Raymond Bradley, Jr., appeals from the trial court's revocation of probation for failure to pay restitution. The defendant pleaded guilty in 2009 to facilitating aggravated burglary, a Class D felony, in exchange for a four-year suspended sentence, and the trial court ordered him to pay $15,500 in restitution. This court affirmed the trial court's judgment. On August 11, 2010, the trial court found that the defendant violated the terms of his suspended sentence and revoked his probation. On appeal, the defendant argues that the trial court abused its discretion by revoking his probation without finding that the defendant had the ability to pay, that he willfully failed to pay, and that no alternative measure to incarceration was available. Following our review, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Mike J. Urquhart, Nashville, Tennessee, for the appellant, Raymond Bradley, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and J.W. Hupp, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background
    The defendant, Raymond Bradley, Jr., pleaded guilty to facilitation of aggravated burglary, a Class D felony, in exchange for a four-year suspended sentence. The plea

agreement reserved to the trial court the determination of restitution. The trial court accepted his guilty plea on August 3, 2009, and after an evidentiary hearing, ordered the defendant to pay $15,500 in restitution, at a rate of $323 per month. The defendant appealed, arguing that the trial court erred in setting the amount of restitution and determining that he had the ability to pay. In its opinion disposing of the defendant's appeal, this court summarized the facts underlying the case as follows:

> At the Defendant's August 3, 2009 guilty plea hearing, the State presented the following factual basis for the Defendant's plea:
>
>> If this matter had gone to trial, the State would have produced witnesses and evidence to show that on April 2, 2007, that a residence on Jackson Downs Boulevard was broken into. The residence of Marilyn Charles. Subsequent investigation revealed that the [D]efendant had pawned a couple of items that had been taken in the burglary. The [D]efendant was a friend of the owner's daughter. He had been in the residence before; however, there was [sic] no other links to him actually being in the residence besides the fact that he had stolen items from the residence.
>
> As a part of his plea, the Defendant agreed that the trial court would set an amount of restitution after an evidentiary hearing.
>
> Marilyn Charles testified for the State at the September 15, 2009 restitution hearing. She said that she kept most of the valuables the Defendant stole along with an appraisal of those items in a safe. Because the appraisal was also stolen, she was only able to guess at the value of the stolen items she had not personally bought. In addition to the two returned items, the Defendant had stolen a number of other items of jewelry, an ivory cigarette box, and a laptop computer. On cross-examination, she individually estimated the value of each of these unreturned items, leading, according to our calculations, to a combined estimate of between $19,874 and $20,874. The State estimated the items' combined value as being "[s]omewhere between $10,000 and $15,000" based on some earlier testimony by Ms. Charles. Ms. Charles testified that she had not insured the stolen items and had no homeowner's insurance.
>
> The Defendant testified that he had been employed in "IS Engineering" but had been unable to work since November, 2008, due to gout. He lived with his mother. More recently, his condition had prevented him from

employment in lawn care. He said he had applied for disability payments and food stamps but had not yet received either. He planned to pay restitution out of his disability payments. On cross-examination, the Defendant said that he had suffered from gout for twenty years, most severely "in the last year or two." He admitted that a gout "flare up" can be treated by a doctor, and that he had been arrested while he had gout "going back a number of years for various kinds of charges, assaults, drugs . . . ." The Defendant argued that he did not have the ability to pay $15,000 in four years, and requested "a reasonable amount of payment" through his probationary period, the remainder to be converted to a civil judgment following that period. In its ruling, the trial court simply stated as follows: "Set the restitution at $15,500. It will be payable at the rate of $323 per month."

*State v. Bradley*, M2009-02055-CCA-R3-CD, 2010 WL 2852295, *1-2 (Tenn. Crim. App., at Nashville, July 21, 2010).

This court determined that the trial court considered the defendant's future ability to pay and financial resources, noting the following:

The trial court allowed the Defendant to testify regarding his medical and disability status; the exchanges above reflect that the trial court simply found this testimony lacking in credibility, concluding, from the Defendant's apparent ability to commit burglary, that he was or would be able to find gainful employment sufficient to pay $323 per month in restitution.

*Id.* at *4.

The court issued a probation violation warrant on or about November 1, 2009, alleging that the defendant failed to make his first restitution payment.[1] The court held a probation revocation hearing on August 11, 2010. At the hearing, the parties stipulated that the defendant did not make his first payment and was unemployed. The state stipulated to the admission of the defendant's medical records, which were offered to show that the defendant suffered from gout, hypertension, and kidney failure. The parties also stipulated that the defendant would live with his mother upon release. When the defendant's counsel addressed the defendant's ability to pay, the following exchange took place:

---

[1] The court's signature on the warrant obscures the date; however, authorities arrested the defendant on November 5, 2009, so we presume the court issued the warrant on a date prior to November 5.

THE COURT: The Court of Appeals has already said that what I set as restitution was reasonable, . . . they have already said that. They have already said the method I set for payment was reasonable.

[COUNSEL]: That is correct but in order - -

THE COURT: And you're telling me it's not.

. . . .

[COUNSEL]: Well, actually, it is two separate issues, Judge. On the direct appeal[,] it was whether or not it was the proper method of setting restitution. In the revocation, I believe, the state has to prove that he had the reason or the ability to pay.

THE COURT: Are you saying he doesn't have any ability to pay? How is he going to live?

[COUNSEL]: He's got a place to live with his mother[;] that was one of the stipulations.

THE COURT: All right. That is one of the stipulations, his mother is going to keep him up. What about all of this medicine and everything, all of this medication, who is going to take care of that? . . . Who is going to take care of his hospitalization, his medicine and everything else?

[COUNSEL]: I suspect it will [be] TennCare, Judge.

THE COURT: You suspect it will be TennCare. It is just as cheap for the sheriff to pay it as it is for him to pay it, isn't it?

[COUNSEL]: Actually, it is probably more because they have to pay for the other part. if Your Honor would like to look at his feet - -

THE COURT: Sentence into effect.

The court revoked the defendant's probation, and the defendant filed a timely appeal.

**Analysis**

On appeal, the defendant argues that the trial court abused its discretion when it revoked the defendant's probation without first making specific findings that the defendant was able to pay but willfully failed to pay and that no other alternative measure to incarceration was available. The state responds that the court's findings were implicit in its rejection of defense counsel's argument.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). A trial court is not required to find that a violation of probation occurred beyond a reasonable doubt. *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Our standard of review on appeal is whether the trial court abused its discretion in finding that a violation of probation occurred. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991); *see also State v. Stubblefield*, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997). The appellate court is obligated to examine the record and determine whether the trial court was presented with sufficient evidence to allow him to make an intelligent decision. *Mitchell*, 810 S.W.2d at 735. In order to conclude that the trial court abused its discretion, there must be no substantial evidence to support the determination of the trial court. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When the basis for revoking a defendant's probation is failure to pay restitution, a court must "articulate a finding that [the] defendant had neglected or willfully refused to pay." *State v. Dye*, 715 S.W.2d 36, 41 (Tenn. 1986). Additionally, the court must "expressly find that alternatives to imprisonment were inadequate to meet the State's interests in punishing the offender, deterring others from similar conduct, and ensuring the payment of restitution to victims of crime." *Id.* at 41 (Tenn. 1986). "Unless such determinations are made . . . , fundamental fairness requires that the [defendant] remain on probation." *Bearden v. Georgia*, 461 U.S. 660, 674, 103 S. Ct. 2064, 2074, 76 L. Ed. 2d 221 (1983). In *Dye*, the Tennessee Supreme Court made clear that the court must inquire into the reasons behind the defendant's failure to pay and alternative measures to incarceration whether the restitution was bargained for or court imposed. *Dye*, 715 S.W.2d at 40. However, we will uphold a court's revocation of probation despite failure to make adequate findings if an independent and proper basis for revocation exists. *See State v. Daryl McKinley Robinson*, W1999-01386-CCA-R3-CD, 2000 WL 546209, at *2 (Tenn. Crim. App., at Jackson, May 4, 2000).

The record is clear that the trial court did not make any explicit findings regarding the defendant's willful failure to pay or whether alternative measures to incarceration were available. The state argues that the trial court *implicitly* found that the defendant's failure to pay was willful. Other panels of this court have reasoned that implicit findings were

sufficient to fulfill the requirement under *Dye* and *Bearden*. *See State v. Roderick Dean Hughes*, E2009-00649-CCA-R3-CD, 2009 WL 3787251, at \*4 (Tenn. Crim. App., at Knoxville, Nov. 12, 2009), *State v. Bernita Hogan*, M2002-00808-CCA-R3CD, 2003 WL 1787312, at \*4-5 (Tenn. Crim. App., at Nashville, Apr. 4, 2003). In *Hughes*, the trial court stated, "I think this record clearly established that he was not paying on his costs and he was not paying on his restitution even before he was convicted of a crime in Indiana." 2009 WL 3787251, at \*4. In *Hogan*, the trial court made several references to the defendant's "thumbing [her] nose at the probation system." 2003 WL 1787312, at \*4. While we believe that a better interpretation of the requirement in *Dye* to "articulate a finding" is that the trial court must make explicit findings, the trial court's statements and questions to defense counsel did not rise even to the level of the implicit findings in *Hughes* and *Hogan*. Furthermore, the trial court did not even consider alternative measures to incarceration, much less "expressly find that alternatives to imprisonment were inadequate." *Dye*, 715 S.W.2d at 40. Therefore, we conclude that the court erred in revoking the defendant's probation without making adequate findings to support its ruling. *See State v. Shane Thomas* Cox, E2009-00628-CCA-R3-CD, 2010 WL 98885, at \*3 (Tenn. Crim. App., at Knoxville, Jan. 12, 2010). The defendant is entitled to a new revocation hearing. *Id.*

## Conclusion

Based on the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
J.C. McLIN, JUDGE